Brooke F. HUDSON, Appellant,

v.

Willis G. KEMPER, Appellee.

No. 2361.

Municipal Court of Appeals for the District of Columbia.

Argued April 13, 1959.

Decided July 21, 1959.

Downey Rice, Washington, D. C., with whom Rufus King, Washington, D. C., was on the brief, for appellant.

J. Raymond Hoy, Jr., Arlington, Va., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant appeals from an adverse finding and judgment in a suit brought by him against appellee for breach of contract.

The facts in the voluminous record may be summarized briefly. In June 1955 appellant and appellee entered into a contract to operate a joint venture known as the Kembrooke Company for the purpose of selling factory-built or "packaged" homes which were ordered from a manufacturer in Pennsylvania. Each partner, after their agreement, operated separate and independent construction companies which engaged in building homes. A prospective home buyer would enter into a "deposit contract agreement" with one of the construction companies. The final building contract was then contingent upon his ability to obtain necessary financing. If the transaction was ultimately consummated, the construction company would place an order with the Kembrooke Company for a prefabricated house, and Kembrooke, upon placing its order with the manufacturer, would then be entitled to the commission, which these parties shared equally.

On February 29, 1956, at the suggestion of appellant, the parties entered into an agreement to dissolve the joint venture, which provided, among other things, that the cash in the bank would be divided equally between them, and the account closed after all outstanding bills were paid. The present controversy arose over the splitting of commissions charged by appellee, who ordered directly from the manufacturer, on five houses to be constructed by him, the building contracts for which were not consummated until after the dissolution agreement of February 1956, although the "deposit contract agreements" were made prior to that time. The only question for decision is whether the five

commissions received by appellee survived the dissolution of the joint venture.

The trial court found that appellant had knowledge of the "deposit contract agreements" before the dissolution of the partnership; that the purpose of the agreement of February 29, 1956, was to "clear any misunderstanding and to clear the partnership"; and that the agreement made no provision for unfinished business.

Generally, it is the rule that a partner who, after dissolution of the firm, makes profits from continued operations shall be accountable to his coadventurer; however, the reason underlying this responsibility seems to be the continued use by the partner of his coadventurer's property.[1] Here, we have, however, an agreement in which a settlement or balance was struck disposing of the partnership assets, such as the trade name, money in the bank, office furniture, catalogs, etc. It even provided that each partner was to pay one-half of the fee for the attorney who drew up the original joint venture agreement. Apparently the parties intended, with the dissolution agreement, a complete severance of their relationship, for appellant had knowledge of the contingent building contracts and made no provision concerning them. There was, therefore, nothing left of the venture. Appellant ran no risk of loss to his property or former property interest. It would follow that since there has been a total termination of their enterprise, with a written agreement settling mutual interests as well as knowledge prior to that agreement of the activities in which an interest is now claimed, the parties could proceed for their own benefit without accounting to each other.[2]

We hold that the trial court was correct.

Affirmed.

1. Annotation, 1957, 55 A.L.R.2d 1391, 1414.

2. See 30 Am.Jur. Joint Adventures § 43 (1958).